Filed: 10/28/2025 12:43 PM
Michael Gould
District Clerk
Collin County, Texas
By Migdalia S Martinez Deputy
Envelope ID: 107376983

**CAUSE NO.** 471-08637-2025

| | | |
|---|---|---|
| **NADYA NEWMAN,** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| **v.** | § | |
| **FREEDOM MORTGAGE CORPORATION, its/their successors and/or assigns,** | § | **_____ JUDICIAL DISTRICT** |
| **Defendant.** | § | |
| | § | **OF COLLIN COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL VERIFIED PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION AND REQUEST FOR DISCLOSURE

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Nadya Newman Aka Nadya Bondarenko, hereinafter called Plaintiff, complaining of and about Freedom Mortgage Corporation, as Defendant, and for her claims and causes of action set forth herein below, respectfully shows unto the Court the following:

## I.

## DISCOVERY CONTROL PLAN LEVEL

1. Plaintiff intends that discovery be conducted under Discovery Level 2 pursuant to Texas Rule of Civil Procedure 190.3.

## II.

## PARTIES AND SERVICE

2. Plaintiff, Nadya Newman aka Nadya Bondarenko, is an individual whose present address is 440 Holly Lane, Lucas, Texas 75002. The last three digits of Plaintiff's driver's license number are XXX, and the last three digits of Plaintiff's social security number are XXX.

3. Upon information and belief, Defendant Freedom Mortgage Corporation ("Freedom Mortgage"), is a foreign entity doing business in the State of Texas as a mortgage loan servicing company, and according to the records of the Texas Secretary of State, Defendant Freedom Mortgage is not registered with the Secretary of State and does not maintain a registered agent for service in the State of Texas, nor any business offices in the State of Texas; and therefore, Defendant Freedom Mortgage may be served pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.044 et seq., by the Texas Secretary of State, Citations Unit, James E. Rudder Building, 1019 Brazos Street, Room 105, Austin, Texas 78701, with two (2) copies of the citation and petition, who may then serve the same upon any authorized officer, director or designated agent of Defendant Freedom Mortgage located at its last known home office address of 951 Yamato Road, Boca Raton, Florida 33431.

**III.**

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this cause pursuant to Article V, Section 8 of the Texas Constitution and Section 24.008 of the Texas Government Code, as the amount in controversy exceeds the minimum jurisdictional limits of this Court.

5. Plaintiff seeks:

a. monetary relief over $100,000 including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees; and,

b. nonmonetary, injunctive and declaratory relief concerning her real property rights and interests.

6. This court has personal jurisdiction herein because Defendant routinely engages in or transacts business in the State of Texas.

7. Venue is proper in Collin County in this cause pursuant to TEX. CIV. PRAC. & REM. CODE § 15.011 et seq., and because this action involves real property and the location of such real property is situated entirely in Collin County, Texas.

**IV.**

**FACTUAL ALLEGATIONS**

8. Plaintiff Nadya Newman (formerly Nadiya Bondarenko) is the owner and resident of the real property located at 440 Holly Lane, Lucas, Texas 75002 (the "Property"). The Property is a single-family residence consisting of 3 bedrooms, 2 bathrooms, and approximately 2,197 square feet, situated on 2.08 acres, built in 1981. According to recent market data, the Property has an estimated value of $840,700.

9. On or about May 14, 2015, Plaintiff and her then-husband, Dmitriy Bondarenko, purchased the Property, financed through a promissory note in the original principal amount of $292,602.00 (the "Note"), executed in favor of HomeBridge Financial Services, Inc., at an interest rate of 4.000% per annum. The Note was secured by a Deed of Trust dated May 14, 2015, recorded on May 15, 2015, in the Official Public Records of Collin County, Texas, under Instrument No. 20150515000565690, naming Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the lender. The original monthly payment under the Note was $1,368.93 in principal and interest. The loan is insured by the Federal Housing Administration ("FHA"), making it an FHA loan subject to federal regulations governing assumption and loss mitigation. A true and correct copy of the Note and Deed of Trust is attached hereto marked Exhibit "A" and incorporated herein by reference for all purposes. The property commonly known as 440 Holly Lane, Lucas Texas 75002, and legally described to wit:

**BEING SITUATED IN COLLIN COUNTY, TEXAS IN THE BENJAMIN SPARKS SURVEY, ABSTRACT NO. 813 AND BEING PART OF A 21.969 ACRE**

**TRACT DESCRIBED IN A DEED FROM BEN BIGGS TO E. E. PILLARD, DATED SEPTEMBER 17, 1968, RECORDED IN VOLUME 717, PAGE 579 OF THE COLLIN COUNTY DEED RECORDS AND BEING OF A 22 ACRE TRACT DESCRIBED IN A PARTITION SUIT, RECORDED IN VOLUME Y, PAGE 403 OF THE DISTRICT COURT MINUTES, COLLIN COUNTY, TEXAS AND BEING MORE FULLY DESCRIBED AS FOLLOWS:**
**BEGINNING AT AN IRON STAKE WHICH BEARS NORTH 89 DEGREES 25 MINUTES 19 SECONDS EAST, A DISTANCE OF 212.42 FEET AND SOUTH 00 DEGREES 07 MINUTES 56 SECONDS WEST, A DISTANCE OF 265.50 FEET FROM THE NORTHWEST CORNER OF THE SAID 22 ACRE TRACT.**
**THENCE SOUTH 00 DEGREES 07 MINUTES 56 SECONDS WEST, A DISTANCE OF 266.40 FEET TO AN IRON ROD FOUND FOR CORNER;**
**THENCE SOUTH 89 DEGREES 25 MINUTES 19 SECONDS WEST, A DISTANCE OF 339.55 FEET TO A NAIL SET FOR CORNER IN THE CENTER OF A 60 FEET WIDE ROAD AND UTILITY EASEMENT;**
**THENCE NORTH 00 DEGREES 07 MINUTES WEST, ALONG THE CENTER OF SAID ROAD AND UTILITY EASEMENT, A DISTANCE OF 266.39 FEET TO A NAIL SET FOR CORNER;**
**THENCE NORTH 89 DEGREES 25 MINUTES 19 SECONDS EAST, LEAVING THE CENTER OF SAID ROAD AND UTILITY EASEMENT, A DISTANCE OF 340.71 FEET TO THE POINT OF BEGINNING AND CONTAINING 2.080 ACRES (90,605 SQUARE FEET) OF LAND.** ("Property");

10. The Note and Deed of Trust were modified by a Loan Modification Agreement dated February 1, 2018, effective March 1, 2018, recorded on April 26, 2018, under Instrument No. 20180426000505490 in the Collin County Official Property Records, which capitalized unpaid interest and advances, resulting in a new unpaid principal balance of $311,726.58 at an interest rate of 4.250% per annum, with a maturity date of March 1, 2048. A true and correct copy of the Loan Modification Agreement is attached hereto marked Exhibit "B" and incorporated herein by reference for all purposes.

11. On or about March 2020, Plaintiff filed for divorce from Dmitriy Bondarenko. He was arrested, and a protection order was issued against him, prohibiting him from coming to the house or having any contact with Plaintiff. That protection order remains in effect to this day.

12. On or about March 2020, concurrent with filing for divorce, Plaintiff applied for loss

mitigation with Home Bridge Mortgage and provided all requested documents. The application was placed under review.

12. In April 2021, Home Bridge Mortgage attempted to not consider Plaintiff for a loan modification assigned and service transferred Plaintiff's mortgage to Defendant Freedom Mortgage.

13. Upon inquiring about the status of her loss mitigation application with Freedom Mortgage, Plaintiff was informed that Defendant intentionally or negligently lost all previously submitted documents, and she was required to resubmit them.

14. In August 2021, Plaintiff's divorce was finalized, and she was awarded sole ownership of the Property. Her ex-husband signed the deed transferring the property to her.

15. Immediately following the divorce finalization in August 2021, Plaintiff resubmitted all required documents to Freedom Mortgage for loss mitigation and also applied for assumption of the mortgage.

16. In December 2021, Freedom Mortgage denied both Plaintiff's loss mitigation and assumption requests, citing incomplete documents. This was the first time Plaintiff became aware that the loss mitigation and assumption departments were not communicating with each other. Plaintiff has good faith belief that her documents have been mishandled because all documents that were requested were provided. As a result of Defendant's negligence Plaintiff has lost equity in her home due to the protracted negligence committed by Plaintiff.

17. On or about January 2022, Plaintiff resubmitted all required documents to Freedom Mortgage.

18. On or about February 2022, Freedom Mortgage increased Plaintiff's monthly mortgage payments without any explanation. Further taking valuable equity from Plaintiff's

homestead.

19. On or about March 2022, Plaintiff contacted Freedom Mortgage, and they confirmed receipt of all submitted documents.

20. During April and May 2022, Plaintiff made multiple calls to Freedom Mortgage inquiring about the status of her loss mitigation and assumption applications but received no response from either department.

21. On May 20, 2022, Plaintiff legally changed her last name to Newman and provided the relevant documentation to Freedom Mortgage to update their records.

22. On or about June 2022, at the request of Freedom Mortgage's loss mitigation department, Plaintiff reapplied yet again for assumption of the mortgage. The loss mitigation department informed Plaintiff that they were awaiting approval from the assumption department before proceeding with mitigation

23. On September 3, 2022, Freedom Mortgage notified Plaintiff that her interest rate had increased from 4.75% to 5.75%. Despite neither Plaintiff's original Deed of Trust, nor her loan modification providing an adjustable rate. In fact, Plaintiff's loan modification expressly provides an interest rate of 4.25%. Plaintiff believes the increase in payments on or about February 2022, is a result of her interest rate increasing improperly from 4.25% to 4.75% despite not receiving any notice indicating that.

24. On September 28, 2022, Freedom Mortgage approved Plaintiff's applications for assumption and loss mitigation. Plaintiff relied to her detriment on this representation when she stopped exploring other refinancing options and thus lost additional equity in her homestead due to arrears continuing to build. However, on October 5, 2022, Freedom Mortgage informed Plaintiff that the approvals had been canceled without explanation as to why.

25. On or about November 2022, Freedom Mortgage instructed Plaintiff to once again reapply for assumption and loss mitigation after receiving the prior approval. On or about January 2023, Freedom Mortgage acknowledged Plaintiff's name change to Nadya Newman for the first time and requested that she resubmit all documents.

26. On or about February 2023, Freedom Mortgage again increased Plaintiff's monthly payment to $4,645.27 without justification. On or about August 2023, Freedom Mortgage informed Plaintiff that her house was scheduled for foreclosure.

27. Plaintiff immediately contacted Freedom Mortgage to inquire about the foreclosure scheduling. They explained that the assumption department was busy, the processing timeline had expired, and foreclosure proceedings had been initiated as a result.

28. In September 2023, Freedom Mortgage informed Plaintiff for the first time that to halt the foreclosure, additional documents were needed to complete the assumption package for review. They assured Plaintiff that once all documents were received and under review, the foreclosure would be stopped. Plaintiff promptly submitted all requested documents. Plaintiff relied to her detriment on this misrepresentation because she continued to attempt to work with Defendant despite the continual delays.

29. On or about November 2023, a supervisor in Freedom Mortgage's assumption department advised Plaintiff that the time to stop the foreclosure had expired and recommended that she consult a bankruptcy attorney to halt the proceedings, which she did. Once again relying on the Defendant's express guidance.

30. Throughout this period, Freedom Mortgage continued to request additional documents, providing Plaintiff with false assurances that the matter could still be resolved and the foreclosure stopped. All while this occurred Plaintiff was losing valuable equity in her

homestead to increasing arrears and fees.

31. On or about December 2023, Plaintiff retained the law firm of Baron & Baron to file for bankruptcy to stop the foreclosure. Plaintiff filed for bankruptcy on January 2, 2024, which successfully halted the foreclosure. Thereafter, the bankruptcy was dismissed.

32. From January 2024 onward, Plaintiff continued working with Freedom Mortgage to resolve the assumption and loss mitigation issues.

33. During this time, Plaintiff communicated with Anita Squier, a supervisor in Freedom Mortgage's loss mitigation department. She assured Plaintiff that she would personally handle and escalate her case, describing it as solvable, and engaged actively in communications.

34. After several exchanges, Ms. Squier's assurances ceased. Her last response to Plaintiff was on December 2, 2024. When Plaintiff inquired about speaking with her thereafter, she was informed that Ms. Squier no longer worked at Freedom Mortgage, which was surprising given her prior statements about her long tenure there, and that no notice was provided to her about it, nor was she directed to another employee to continue work Ms. Squier was previously working on.

35. Plaintiff was shocked to learn that Freedom Mortgage had rescheduled her property for foreclosure, with a sale date of January 7, 2025. Due to the short timeline, Plaintiff was compelled to retain a new bankruptcy attorney, Gary Lyons, and filed for bankruptcy on December 12, 2024, which stopped the foreclosure.

36. On or about February 2025, Plaintiff received a call from Heidi, a customer care agent at Freedom Mortgage assigned to her case. She compiled a list of new or updated documents required for submission. Plaintiff provided all requested documents, which she confirmed receiving, and she promised to escalate the matter to upper management for approval.

She even provided an estimate of Plaintiff's new monthly payment upon final approval. Plaintiff worked with her from February 2025 through July 2025. The last communication from Heidi was in July 2025; when Plaintiff later called to speak with her, she was informed that Heidi no longer worked at Freedom Mortgage. Once again Plaintiff was left alone without direction from Defendant after being provided assurances that she would be handled with the utmost care.

37. Plaintiff's bankruptcy case was dismissed on July 21, 2025.

38. Freedom Mortgage's bankruptcy attorney, and agent for Defendant, became involved and communicated with Plaintiff's bankruptcy attorney. She emailed Plaintiff, instructing her to resubmit all documents to the assumption and loss mitigation departments, with promises to escalate her case. Plaintiff submitted the documents to Freedom Mortgage and to their bankruptcy attorney, Mukta Suri. However, no action was taken, and the matter remains unresolved.

39. In July 2025, Plaintiff received a statement from Freedom Mortgage denying credit for a loan modification. The letter was undated and provided only a generic denial. Upon inquiring with Freedom Mortgage, Plaintiff was informed for the first time that the denial was due to the original loan being an FHA loan, which they claimed is not assumable.

40. Plaintiff subsequently learned that her house has been scheduled for foreclosure on September 2, 2025. Shocked to her concious, as she had not received notice and instead thought a loan modification was underway, she immediately sought counsel.

41. The repeated delays, denials, document requests, and false assurances by Freedom Mortgage have caused Plaintiff significant financial hardship, emotional distress, and the need to file multiple bankruptcies solely to prevent wrongful foreclosure causing great damage to her credit. Without immediate injunctive relief, Plaintiff will suffer irreparable harm through the loss

of her home.

42. The Property is Plaintiff's homestead property. At all relevant and material times hereto, Plaintiff was the fee simple owner of the subject Property. A true and correct copy of the most recent Notice of Substitute Trustee's Sale as pulled by Plaintiff's Counsel is attached hereto marked Exhibit "C" and incorporated herein by reference for all purposes.

43. Soon after Plaintiff discovered her home was set to be foreclosed on September 2, 2025, the Helstowski Law Firm drafted this lawsuit petition and request for Temporary Restraining Order, to stop the threat of foreclosure.

44. Defendant thereafter canceled the Plaintiffs foreclosure that was set for September 2, 2025 without providing reasoning as to why. Plaintiff was hopefully a resolution could be reached without continuing forward with litigation. Those hopes were quickly dashed.

45. Plaintiff began to receive advertisements in her mailbox stating offering her help with her upcoming November 4, 2025, pending foreclosure.

46. After numerous phone calls and research, the Plaintiff discovered that her home is in fact on November 4, foreclosure auction list.

47. Around October 2025, without any communication or reasoning, the Defendant once again placed the Plaintiffs home in foreclosure, and the sale is scheduled to take place on November 4, 2025.

48. Plaintiff has not received notice and has searched for a notice stating the referenced property is in fact in danger of being sold at the Collin County foreclosure auction on November 4, 2025.

49. The Plaintiff is very concerned and worried that she will lose her home.

50. The Plaintiff feels as if the Defendant is misleading her into believing that everything

is ok and that she can apply for a loan modification, continuing the systemic errors enriching themselves by continuing to take Plaintiff's equity from her homestead through continuing arrears, fees, and increased interest without due cause, however, the Defendant is actually trying to foreclose on her home without noticing the Plaintiff that she is in danger of losing her home.

**V.**

**FIRST CAUSE OF ACTION –**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION**

51. Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Section IV above as if fully set forth herein.

52. Pursuant to Rule 680 of the Texas Rules of Civil Procedure, Plaintiff hereby seeks immediate relief in the form of a Temporary Restraining Order wherein this Court orders, restrains and prohibits the Defendant, and/or any of its/their agents, employees, attorneys, trustees, successor trustees, successors and/or assigns from foreclosing upon Plaintiff's homestead property for a period of at least fourteen (14) days until a temporary injunction hearing is held by this Court concerning whether Plaintiff has a probable right of recovery for his various claims and causes of action pleaded herein. There presently exists an imminent threat of irreparable harm to Plaintiff in the form of Defendant, and/or its/their agents, employees, attorneys, trustees, successor trustees, successors and/or assigns stated threat and intent to complete a foreclosure sale and divest Plaintiff of his fee simple title, ownership interests, and possession of his homestead property, unless this Court immediately restrains such acts or conduct as requested herein.

53. Moreover, after issuance of a temporary restraining order, and upon notice and a hearing as required by law, Plaintiff further seeks entry of a Temporary Injunction to maintain the status quo and prohibit the Defendant, and/or any of its/their agents, employees, attorneys,

trustees, successor trustees, successors and/or assigns from foreclosing or attempting to foreclose upon Plaintiff's homestead property until the merits of Plaintiff's various claims and causes of action as pleaded herein can be fairly and fully adjudicated.

## VI.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT AND FAILURE OF CONDITION PRECEDENT

54. Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Section IV, and V above as if fully set forth herein.

55. The acts, conduct, or omissions of the Defendant as described herein, supra, also constitute a material breach of the Deed of Trust contract, and a failure of condition precedent as to its attempted acceleration of Plaintiff's loan and/or posting of Plaintiff's homestead property for foreclosure sale, which material breach is the proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

56. Specifically, the Defendant has breached paragraph 19 of the Deed of Trust by failing to process Plaintiff's assumption and loss mitigation applications in good faith, repeatedly losing documents, providing false assurances, and denying the assumption on erroneous grounds that FHA loans are not assumable. These breaches directly caused Plaintiff's default through unauthorized payment increases and prevented resolution, resulting in damages including increased costs, attorney fees, and emotional distress.

57. As each of the acts, conduct and/or omissions of the Defendant as described herein that constitute breach of contract and failure of condition precedent were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

VII.

**THIRD CAUSE OF ACTION -**
**VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT**

58. Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, and VI above as if fully set forth herein.

59. In addition, the acts, conduct and/or omissions of the Defendant, who at all times was acting as "mortgage servicer" of Plaintiff's loan, of failing to provide Plaintiff with the required Notice of Default and Opportunity to Cure notice as expressly required under the terms of the Deed of Trust, and/or the specific amount of the debt that was in default and the time period to cure said default under said notice, intentionally or negligently misrepresenting the amount owed through the unexplained increase in interest, systematically refusing to accept, review, or consider completed loan modification packets in good faith and instead proceeded to accelerate the loan maturity and post Plaintiff's property for foreclosure sale each also constitute violations of the Texas Debt Collection Act, TEX. FIN. CODE §392.001 et seq., and is a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

60. Specifically, the Defendant's acts, conduct or omissions as described herein, supra, constitute violations of the following provisions of the TDCA: § 392.301(a)(7)-threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; and § 392.301(a)(8)-threatening to take an action prohibited by law; and further § 392.304(a)(8) – misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding; and § 392.304(a)(19) – using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer and which violations are a producing

cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

61. As each of the acts, conduct and/or omissions of the Defendant as described herein that constitute violations of the Texas Debt Collection Act were committed intentionally, knowingly and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

**VIII.**

**FOURTH CAUSE OF ACTION -**
**VIOLATIONS OF RESPA AND REGULATION X OF THE CODE OF FEDERAL REGULATIONS**

62. Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, VI, and VII above as if fully set forth herein.

63. The acts, conduct and/or omissions of Defendant, which at all material times hereto was acting in its alleged capacity as "mortgage servicer" of Plaintiff's Loan also constitute violations of RESPA and Regulation X of the Code of Federal Regulations established by the Consumer Financial Protection Bureau, 12 C.F.R. §1024.41 et seq., which became effective as of January 10, 2014, because the acts, conduct or omissions as described herein, *supra*, constitute violations this statute, and those statutory violations are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

64. Pursuant the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605(f), Plaintiff has a private right of action providing for remedies for the claimed breaches of Regulation X, including actual damages, costs, statutory damages and attorney's fees. See 12 C.F.R. §1024.41(a).

65. Plaintiff's Loan is a "federally related mortgage loan" as that term is defined by

12 C.F.R. §1024.41(a) and Defendant is subject to these regulations.

66. Specifically, the acts, conduct or omissions of Defendant Selene, who at all material times was acting in its capacity as a "loan servicer" of Plaintiff's Loan, of failing or refusing to provide Plaintiff with any updated payoff quote, increasing Plaintiff's interest rate without cause and in violation of her Deed of Trust and Loan Modification and instead accelerating Plaintiff's Loan and posting his homestead property for foreclosure sale each constitute violations of Regulation X, 12 C.F.R. §1024.41(b)(2)(i)(A)-(B); 12 C.F.R. §1024.41(c); 12 C.F.R. §1024.41(f)(2)(i)-(iii); §1024.41(f)(3)(i)-(ii); 12 C.F.R. §1024.41(g); and 12 C.F.R. §1024.41(k)(1)-(4), and are a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

67. As each of the acts, conduct, and/or omissions of Defendant SPS as described herein that constitute violations of RESPA and Regulation X were committed intentionally, knowingly, and/or with malice, or a conscious indifference as to the rights of Plaintiff, Plaintiff is entitled to and hereby seek an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

## IX.

## FIFTH CAUSE OF ACTION - NEGLIGENT MISREPRESENTATION

68. Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV, V, VI, VII, VIII above as if fully set forth herein.

69. The acts, conduct, or omissions of the Defendant, and/or its various agents or employees as described herein, supra, of failing or refusing to provide Plaintiff with any written notice of default and opportunity to cure notice, nor any written response to multiple pending complete loss mitigation application, while at the same time expressly informing her that no

foreclosure sale would occur until the review was completed, instead proceeding to accelerate the loan and post the property for foreclosure sale, and the many assurances that her matter would be resolved from Defendant's agents each constitute negligent misrepresentation of material facts that Plaintiff relied upon to her detriment that were made while the Defendant was engaged in its ordinary course of business in a transaction in which the Defendant has a pecuniary interest, and which detrimental reliance was foreseeable, and is proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court in unnecessary attorney's fees for two bankruptcies, loss of equity in her homestead, and continual stress over the loss of her home.

70. As each of the acts, conduct and/or omissions of the Defendant as described herein constitute negligent misrepresentation and were committed intentionally, knowingly, and/or with malice, or conscious indifference as to the rights of the Plaintiff, Plaintiff is entitled to an award of exemplary damages in excess of the minimum jurisdictional limits of this Court.

## X.

## EXEMPLARY DAMAGES

71. Plaintiff hereby incorporates by reference and realleges all material allegations of fact set forth in Sections IV through IX above as if fully set forth herein.

72. Plaintiff would further show that the various acts, conduct and/or omissions of the Defendant complained of herein were committed knowingly, willfully, intentionally, and with actual awareness, and with the specific and pre-determined intention of enriching said Defendant at the expense of Plaintiff. In order to punish said Defendant for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages as provided by Section 41.003(a)(1) of the Texas Civil Practice and Remedies Code.

**XI.**

**ATTORNEY'S FEES**

73. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 37.001 et seq. of the Texas Civil Practices and Remedies Code, (b) Section 12.001 of the Texas Civil Practices and Remedies Code, (c) TEX. FIN. CODE §392.001 et seq., (d) RESPA and Regulation X of the Code of Federal Regulations, 12 U.S.C. §2605 et seq; and (e) common law.

**XII.**

**JURY DEMAND**

74. Plaintiff hereby requests that all issues of fact be tried before a jury.

**XIII.**

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Nadya Newman aka Nadya Bondarenko, respectfully prays that the Defendant and/or each of its/their various agents, attorneys, or employees as described herein, *supra*, each be cited to appear and answer herein, and that Plaintiff be granted immediate relief in the form of a temporary restraining order and temporary injunction preventing the Defendant, and/or any of its/their respective agents, employees, attorneys, trustees, substitute trustees, successors and/or assigns from foreclosing upon Plaintiff's homestead property described herein until the merits of his various claims and causes of action pleaded herein may be fairly adjudicated; and that upon the final trial of this cause, judgment be entered in favor of Plaintiff, and against the Defendant, jointly and/or

severally, for Breach of Contract and Failure of Condition Precedent; for violations of RESPA and the Code of Federal Regulations; for violations of the Texas Debt Collection Act; and negligent misrepresentation and for an award of all economic and actual damages requested herein in an amount in excess of the minimum jurisdictional limits Court, including exemplary damages, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, and for an award of all attorney's fees and costs of court incurred, and for such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**J. GANNON HELSTOWSKI LAW FIRM**

***/s/ John G. Helstowski***

John G. Helstowski
Texas Bar No. 24078653
5209 Heritage Avenue, Suite 510
Colleyville, Texas 76034
Telephone: (817) 382-3125
Facsimile: (817) 382-1799
Email: jgh@jghfirm.com
Attorney for Plaintiff

**VERIFICATION**

STATE OF TEXAS §
§
COUNTY OF Texas §

"My name is Nadya Newman I am the Plaintiff named in the attached and foregoing PLAINTIFF'S ORIGINAL VERIFIED PETITION. I am over the age of 21 years and have never been convicted of a felony or other crime involving moral turpitude. I have personal knowledge of all of the facts set forth in the PLAINTIFF'S ORIGINAL PETITION and hereby state that every factual statement set forth therein is true and correct.

FURTHER AFFIANT SAYETH NOT."

EXECUTED this 28th day of October, 2025.

Signature

Print Nadya Newman

**SUBSCRIBED AND SWORN BEFORE ME** on this 28th day of October, 2025, by Client, to certify which witness my hand and official seal.

Amanda J Norton
My Commission Expires
10/29/2028
Notary ID 126566321

Notary Public in and for the State of Texas

Amanda J. Norton
Printed Name of Notary Public

My Commission Expires on: 10/29/2028

(seal)

EXHIBIT
A

LOAN #: [redacted]
MIN: [redacted]

FHA Case No. [redacted]

ORIGINAL

# NOTE

| | | |
|---|---|---|
| May 14, 2015 | Plano, | Texas |
| [Date] | [City] | [State] |

440 Holly Lane, Lucas, TX 75002
[Property Address]

1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **HomeBridge Financial Services, Inc.**

and its successors and assigns.

2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **TWO HUNDRED NINETY TWO THOUSAND SIX HUNDRED TWO AND NO/100*************************************** Dollars (U.S. **$292,602.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR** percent ( **4.000 %** ) per year until the full amount of principal has been paid.

3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the **1st** day of each month beginning on **July 1, 2015.** Any principal and interest remaining on the **1st** day of **June, 2045** will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at **P.O. Box 100050**
**Kennesaw, GA 30156-9202**

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$1,396.93.** This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box] ☐ Graduated Payment Allonge ☐ Growing Equity Allonge
☐ Other [specify]

5. BORROWER'S RIGHT TO PREPAY

**Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.**

**Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Lender will use the Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Lender may apply the Prepayment to any accrued and unpaid interest on the Prepayment amount before applying the Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due date or in the amount of the monthly payment unless the Lender agrees in writing to those changes.**

6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **15** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000 %** ) of the overdue amount of each payment.

Initials: D.B.



[redacted]

LOAN #: [redacted]

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower and any other person who has obligations under this Note waive notice of intention to accelerate and the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_______________________________________ (Seal)
DMITRIY BONDARENKO

Lender: HomeBridge Financial Services, Inc.
NMLS ID: [redacted]
Loan Originator: Gail Hillman
NMLS ID: [redacted]

Without Recourse, Pay To The Order Of:

_______________________________________
HomeBridge Financial Services, Inc.

_______________________________________
Johanna Grebelsky, Assistant Secretary

[redacted] 05/15/2015 10:35:20 AM DT [redacted]

When recorded, mail to:
HomeBridge Financial Services, Inc.
Attn: FINAL DOCS DEPARTMENT
433 Hackensack Avenue, 6th Floor
Hackensack, NJ 07601

GF#: [redacted]

This document was prepared by:
HomeBridge Financial Services, Inc.
433 Hackensack Avenue, 6th Floor
Hackensack, NJ 07601

Title Order No.: [redacted]
Escrow No.: [redacted]
LOAN #: [redacted]

[Space Above This Line For Recording Data]

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

State of Texas

# DEED OF TRUST

FHA Case No. [redacted]

MIN [redacted]
MERS PHONE # [redacted]

THIS DEED OF TRUST ("Security Instrument") is made on May 14, 2015. The Grantor is
DMITRIY BONDARENKO AND NADIYA BONDARENKO, HUSBAND AND WIFE

("Borrower").

The trustee is Allan B. Polunsky

whose address is 17806 I.H. 10 West, Suite 450, San Antonio, TX 78257

("Trustee").

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel. [redacted]
HomeBridge Financial Services, Inc.

("Lender") is organized and existing under the laws of New Jersey,
and has an address of 194 Wood Ave. South, 9th Floor, Iselin, NJ 08830.

LOAN #: [redacted]

Lender includes any holder of the Note who is entitled to receive payments under the Note. Borrower owes Lender the principal sum of TWO HUNDRED NINETY TWO THOUSAND SIX HUNDRED TWO AND NO/100* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. $292,602.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **June 1, 2045**. The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in **Collin** County, Texas:

**SEE LEGAL DESCRIPTION ATTACHED AS EXHIBIT "A"**
**APN #:** [redacted]

which has the address of **440 Holly Lane, Lucas,**
[Street, City],

Texas **75002** ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become

Initials: DB. NB



[redacted]

LOAN #: [redacted]

obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.



[redacted]

LOAN #: [redacted]

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.
However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or

Initials: D.B. N.B.



[redacted]

LOAN #: [redacted]

regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☒ Planned Unit Development Rider
☐ Graduated Payment Rider ☐ Other(s) [specify]

Initials: D.B. N.B.



[redacted]

LOAN #: [redacted]

**24. Purchase Money; Vendor's Lien; Renewal and Extension.** [Complete as appropriate]

☒ Vendor's Lien: The Note secured hereby is primarily secured by the Vendor's Lien retained in the Deed of even date herewith conveying the Property to Borrower, which Vendor's Lien has been assigned to Lender, this Deed of Trust being additional security therefor.

☐ Renewal and Extension: The Note secured hereby is in renewal and extension, but not in extinguishment, of that indebtedness described on the Renewal and Extension Exhibit attached hereto and made a part hereof for all purposes.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

5/14/15 (Seal)
DMITRIY BONDARENKO DATE

5/14/15 (Seal)
NADIYA BONDARENKO DATE

State of TEXAS County of COLLIN

Before me, Avery Warren, on this day personally appeared DMITRIY BONDARENKO AND NADIYA BONDARENKO, known to me (or proved to me on the oath of ______ or through passport) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 14 day of May, 2015.

AVERY WARREN
NOTARY PUBLIC
STATE OF TEXAS
My Comm Exp 01/22/17

(Notary Public Signature)

Lender: HomeBridge Financial Services, Inc.
NMLS ID: [redacted]
Loan Originator: Gail Hillman
NMLS ID: [redacted]



[redacted]

LOAN #: [redacted]
MIN: [redacted]

FHA Case No. [redacted]

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 14th day of **May, 2015,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **HomeBridge Financial Services, Inc.**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
**440 Holly Lane**
**Lucas, TX 75002.**

The Property Address is a part of a planned unit development ("PUD") known as **Lucas Country Estates #1-E**

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.



[redacted]

LOAN #: [redacted]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

5/14/15 (Seal)
DMITRIY BONDARENKO DATE

5/14/15 (Seal)
NADIYA BONDARENKO DATE



[redacted]

Escrow File No.: [redacted]

**EXHIBIT "A"**

**BEING situated in Collin County, Texas in the Benjamin Sparks Survey, Abstract No. 813 and being part of a 21.969 acre tract described in a Deed from Ben Biggs to E. E. Pillard, dated September 17, 1968, recorded in Volume 717, Page 579 of the Collin County Deed Records and being of a 22 acre tract described in a Partition Suit, recorded in Volume Y, Page 403 of the District Court Minutes, Collin County, Texas and being more fully described as follows:**

**BEGINNING at an iron stake which bears North 89 degrees 25 minutes 19 seconds East, a distance of 212.42 feet and South 00 degrees 07 minutes 56 seconds West, a distance of 265.50 feet from the Northwest corner of the said 22 acre tract.**

**THENCE South 00 degrees 07 minutes 56 seconds West, a distance of 266.40 feet to and iron rod found for corner;**

**THENCE South 89 degrees 25 minutes 19 seconds West, a distance of 339.55 feet to a nail set for corner in the center of a 60 feet wide Road and Utility Easement;**

**THENCE North 00 degrees 07 minutes West, along the center of said Road and Utility Easement, a distance of 266.39 feet to a nail set for corner;**

**THENCE North 89 degrees 25 minutes 19 seconds East, leaving the center of said Road and Utility Easement, a distance of 340.71 feet to the Point of Beginning and containing 2.080 acres (90,605 square feet) of land.**

**NOTE: COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.**

EXHIBIT
B

[redacted] 04/26/2018 10:31:28 AM MO 1/10

After Recording Return to:
Title365
345 Rouser Road, Bldg 5, Ste 101
Coraopolis, PA 15108

(Space Above This Line For Recording Data) [redacted]

Loan No. [redacted] Data ID: [redacted]
Borrower: DMITRIY BONDARENKO
Original Recorded Date: May 15, 2015
FHA CASE NO.: [redacted]

Original Principal Amount: $292,602.00
Modified Principal Amount: $284,791.61
Modified Interest Bearing Amount: $311,792.68

## FHA HOME AFFORDABLE MODIFICATION AGREEMENT

(Step Two of Two-Step Documentation Process)
MERS Phone: [redacted] (6377) MIN: [redacted]

Borrower ("I")[1]: DMITRIY BONDARENKO AND NADIYA BONDARENKO , HUSBAND AND WIFE , whose address is 440 HOLLY LANE, LUCAS, TEXAS 75002

Lender ("Lender"): HOMEBRIDGE FINANCIAL SERVICES, INC., 112 TOWNPARK DR., SUITE 300, KENNESAW, GA 30144

Date of First Lien Security Instrument ("Mortgage") and Note ("Note"): May 14, 2015

Loan Number: [redacted]

Property Address: 440 HOLLY LANE, LUCAS, TEXAS 75002 ("Property")

"MERS" is Mortgage Electronic Registration Systems, Inc. ("Beneficiary"). MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, [redacted]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

1 If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Loan No: [redacted] Data ID: [redacted]

Recorded in INST# 20150215000565690 of the Official Records of the County Recorder's or Clerk's Office of COLLIN COUNTY, TEXAS.

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the First Lien Mortgage on the Property, and (2) the Note secured by the First Lien Mortgage. The First Lien Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents; I previously entered into the Trial Period Plan and the Loan Workout Plan with Lender.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. My Representations. I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. I live in the Property as my principal residence, and the Property has not been condemned;
   C. There has been no change in the ownership of the Property since I signed the Loan Documents;
   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the FHA Home Affordable Modification program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have timely made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

Loan No: [redacted] Data ID: [redacted]

2. Acknowledgements and Preconditions to Modification. I understand and acknowledge that:

   A. TIME IS OF THE ESSENCE under this Agreement;
   B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. The Modification. If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on February 1, 2018 (the "Modification Effective Date") and all unpaid late charges that remain unpaid are waived. The Loan Documents will be modified and the first modified payment will be due on March 1, 2018.

   A. The new Maturity Date will be: February 1, 2048.
   B. The modified Principal balance of my Loan will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Loan will be $311,792.68 (the "New Principal Balance").
   C. Interest at the rate of 4.250% will begin to accrue on the New Principal Balance as of February 1, 2018 and the first new monthly payment on the New Principal Balance will be due on March 1, 2018. My payment schedule for the modified Loan is as follows:

Loan No: [redacted] Data ID: [redacted]

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-30 | 4.250 | 02/01/18 | $1,533.84 | $924.44, may adjust periodically | $2,458.28, may adjust periodically | 03/01/18 | 360 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

Loan No: [redacted] Data ID: [redacted]

4. Additional Agreements. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That I have been advised of the amount needed to fully fund my Escrow Account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed. The Loan Documents constitute a first lien on the Property and are in no way prejudiced by this Agreement.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

H. That MERS holds only legal title to the interests granted by the Borrower in the mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage Loan.

Loan No: [redacted] Data ID: [redacted]

In Witness Whereof, the Lender and I have executed this Agreement.

Date: 4-9-18

..................................................(Seal)
DMITRIY BONDARENKO -Borrower

..................................................(Seal)
NADIYA BONDARENKO -signing solely to acknowledge this Agreement but not to incur any personal liability for the debt

- Individual Acknowledgment -

STATE OF TEXAS §
COUNTY OF COLLIN §

This instrument was acknowledged before me on the 09 day of April, 20 18, by

DMITRIY BONDARENKO and NADIYA BONDARENKO

BEATRICE MARTINEZ
Notary Public, State of Texas
Comm. Expires 11-09-2021
Notary ID [redacted]

Notary Public

Beatrice Martinez
(Printed Name)

My commission expires: 11-09-2021

Loan No: [redacted] Data ID: [redacted]

Date: 4/18/18

Lender: HOMEBRIDGE FINANCIAL SERVICES, INC.

By: [signature]
KELLIE ROHLING, SVP OF LOAN ADMINISTRATION

\- Lender Acknowledgment -

STATE OF GEORGIA §
COUNTY OF COBB §

This instrument was acknowledged before me on April 18, 2018, by KELLIE ROHLING, as SVP OF LOAN ADMINISTRATION of HOMEBRIDGE FINANCIAL SERVICES, INC., on behalf of the entity.

[signature]
Notary Public

Sharon Bernico
(Printed Name)

My commission expires: 7/5/2020

SHARON BERNICO
Notary Public - State of Georgia
Douglas County
My Commission Expires Jul 5, 2020

Loan No: [redacted] Data ID: [redacted]

Date: 04-18-2018

Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: ______________________________

Its: Nkenge West Vice President
(Printed Name and Title)

- Beneficiary Acknowledgment -

STATE OF GEORGIA §
COUNTY OF COBB §

This instrument was acknowledged before me on April 18th, 2018, by Nkenge West as VP of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., on behalf of the entity

SABRINA M. SPEIGHT
Notary Public - State of Georgia
Cobb County
My Commission Expires Aug 31, 2020

______________________________
Notary Public

Sabrina Speight
(Printed Name)

My commission expires: 8/31/20

Loan No: [redacted]
Borrower: DMITRIY BONDARENKO

Data ID: [redacted]

# LOAN AGREEMENT RIDER

THIS LOAN AGREEMENT RIDER is made this 1st day of March, 2018, and is incorporated by and into and shall be deemed to amend and supplement any and all documents constituting "Loan Agreements" as defined by Section 26.02 of the Texas Business & Commerce Code by and between DMITRIY BONDARENKO ("Borrower")

and HOMEBRIDGE FINANCIAL SERVICES, INC. ("Lender") of the same date and covering the property located at

440 HOLLY LANE,
LUCAS, TEXAS 75002.

In addition to the covenants made in the Loan Agreements, Borrower and Lender further covenant and agree as follows:

1. The rights and obligations of Borrower and Lender shall be determined solely from the written Loan Agreements, and any prior oral agreements between Lender and Borrower are superseded by and merged into the Loan Agreements.

2. The Loan Agreements may not be varied by any oral agreements or discussions that occur before, contemporaneously with, or subsequent to the execution of the Loan Agreements.

3. The following Notice is provided pursuant to Section 26.02 of the Texas Business & Commerce Code: THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

   THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

HOMEBRIDGE FINANCIAL SERVICES, INC.

By: ______________________________

Its:

______________________________
DMITRIY BONDARENKO -Borrower

Loan No: [redacted] Data ID: [redacted]
Borrower: DMITRIY BONDARENKO
Property Address: 440 HOLLY LANE, LUCAS, TEXAS 75002

## LEGAL DESCRIPTION

BEING situated in Collin County, Texas in the Benjamin Sparks Survey, Abstract No. 813 and being part of a 21.969 acre tract described in a Deed from Ben Biggs to E. E. Pillard, dated September 17, 1968, recorded in Volume 717, Page 579 of the Collin County Deed Records and being of a 22 acre tract described in a Partition Suit, recorded in Volume Y, Page 403 of the District Court Minutes, Collin County, Texas and being more fully described as follows:

BEGINNING at an iron stake which bears North 89 degrees 25 minutes 19 seconds East, a distance of 212.42 feet and South 00 degrees 07 minutes 56 seconds West, a distance of 265.50 feet from the Northwest corner of the said 22 acre tract.

THENCE South 00 degrees 07 minutes 56 seconds West, a distance of 266.40 feet to and iron rod found for corner;

THENCE South 89 degrees 25 minutes 19 seconds West, a distance of 339.55 feet to a nail set for corner in the center of a 60 feet wide Road and Utility Easement;

THENCE North 00 degrees 07 minutes West, along the center of said Road and Utility Easement, a distance of 266.39 feet to a nail set for corner;

THENCE North 89 degrees 25 minutes 19 seconds East, leaving the center of said Road and Utility Easement, a distance of 340.71 feet to the Point of Beginning and containing 2.080 acres (90,605 square feet) of land.

NOTE: COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.



Filed and Recorded
Official Public Records
Stacey Kemp, County Clerk
Collin County, TEXAS
04/26/2018 10:31:28 AM
$62.00 TBARNETT
[redacted]

A

EXHIBIT
C

FILED
2025 OCT -9 PM 1:14
STACEY KEMP
COUNTY CLERK
COLLIN COUNTY, TEXAS
BY: DAR DEPUTY

# NOTICE OF SUBSTITUTE TRUSTEE'S SALE

R 2790

T.S. #: 2023-05556-TX

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active-duty military service to the sender of this notice immediately.**

**Date, Time, and Place of Sale** - The sale is scheduled to be held at the following date, time and place:

| | |
|---|---|
| Date: | **11/4/2025** |
| Time: | **The earliest time the sale will begin is 10:00 AM**, or within three (3) hours after that time. |
| Place: | Collin County Courthouse, Texas, at the following location: The front steps of the Collin County Courthouse located at 2100 Bloomdale Road, McKinney, Texas 75071<br>Or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioners Court, pursuant to section 51.002 of the Texas Property Code. |

**Property To Be Sold** - The property to be sold is described as follows:

SEE ATTACHED EXHIBIT 'A'

**Commonly known as:** 440 HOLLY LANE LUCAS, TX 75002

**Instrument to be Foreclosed** – The instrument to be foreclosed is the Deed of Trust dated **5/14/2015** and recorded in the office of the County Clerk of Collin County, Texas, recorded on **5/15/2015** under County Clerk's File No **20150515000565690**, in Book -- and Page -- The subject Deed of Trust was modified by Loan Modification recorded as Instrument 20180426000505490 and recorded on 04/26/2018 of the Real Property Records of Collin County, Texas.

| | |
|---|---|
| **Grantor(s):** | **Dmitriy Bondarenko and Nadiya Bondarenko, husband and wife** |
| **Original Trustee:** | **Allan B. Polunsky** |
| **Substitute Trustee:** | **Nestor Solutions, LLC, Auction.com, LLC, Xome Inc., Tejas Corporate Services, LLC, Donna Stockman, Brenda Wiggs, David Stockman, Michelle Schwartz, Guy Wiggs, Kathy Arrington, Janet Pinder, Brandy Bacon, Abstracts/Trustees of Texas, LLC, Jim Mills, Susan Mills, Andrew Mills-Middlebrook, George Hawthorne, Ed Henderson, David Cullar, Ashley Hammons, Russell Stockman, Francesca Ortolani, Shelley Ortolani, Mary Mancuso, Liz Hach, Michele Hreha, Carol Dunmon, Payton Hreha, Jamie Dworsky, Angela Cooper, Jeff Benton, Brian Hooper, Mike Jansta, Mike Hayward, Jay Jacobs, Resolve Trustee Services, LLC** |
| **Original Mortgagee:** | **Mortgage Electronic Registration Systems, Inc., as Beneficiary, as *nominee for HomeBridge Financial Services, Inc., its successors and* assigns** |

Unofficial

T.S. #: 2023-05556-TX

**Current Mortgagee:** **Freedom Mortgage Corporation**

**Mortgage Servicer:** **Freedom Mortgage Corporation**

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property securing the above referenced loan.

**Terms of Sale** - The sale will be conducted as a public auction to the highest bidder for cash, subject to the provisions of the deed of trust permitting the mortgagee thereunder to have the bid credited to the note up to the amount of the unpaid debt secured by the deed of trust at the time of sale.

Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day the property is sold.

The sale will be made expressly subject to any title matters set forth in the deed of trust, but prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the deed of trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any.

Pursuant to the Deed of Trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in "as is, where is" condition, without any express or implied warranties, except as to the warranties of title (if any) provided for under the deed of trust. Prospective bidders are advised to conduct an independent investigation of the nature and physical condition of the property. Pursuant to section 51.0075 of the Texas Property Code, the trustee reserves the right to set further reasonable conditions for conducting the sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by the trustee or any substitute trustee.

**Obligations Secured** - The deed of trust provides that it secures the payment of the indebtedness and obligations therein described (collectively the "Obligations") including by not limited to (1) the promissory note in the original principal amount of $292,602.00, executed by Dmitriy Bondarenko and Nadiya Bondarenko, husband and wife, and payable to the order of Mortgage Electronic Registration Systems, Inc., as Beneficiary, as nominee for HomeBridge Financial Services, Inc., its successors and assigns; (2) all renewals and extensions of the note; and (3) any and all present and future indebtedness of Trustor(s) to the current holder of the Obligations to the mortgagee under the deed of trust.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Questions concerning the sale may be directed to the undersigned or to the Mortgagee:

**Freedom Mortgage Corporation**
**11988 EXIT 5 PKWY BLDG 4**
**FISHERS IN 46037-7939**
**Phone: 855-690-5900**

**Default and Request to Act** - Default has occurred under the deed of trust, and the mortgagee has requested me, as Trustee, to conduct this sale. Notice is given that before the sale the mortgagee may appoint another person substitute trustee to conduct the sale.

Unofficial

T.S. #: 2023-05556-TX

Dated: 10/9/25

Nestor Solutions, LLC, Auction.com, LLC, Xome Inc., Tejas Corporate Services, LLC, Donna Stockman, Brenda Wiggs, David Stockman, Michelle Schwartz, Guy Wiggs, Kathy Arrington, Janet Pinder, Brandy Bacon, Abstracts/Trustees of Texas, LLC, Jim Mills, Susan Mills, Andrew Mills-Middlebrook, George Hawthorne, Ed Henderson, David Cullar, Ashley Hammons, Russell Stockman, Francesca Ortolani, Shelley Ortolani, Mary Mancuso, Liz Hach, Michele Hreha, Carol Dunmon, Payton Hreha, Jamie Dworsky, Angela Cooper, Jeff Benton, Brian Hooper, Mike Jansta, Mike Hayward, Jay Jacobs, Resolve Trustee Services, LLC

Jeff Benton

c/o Nestor Solutions, LLC
214 5th Street, Suite 205
Huntington Beach, California 92648
Phone: (888) 403-4115
Fax: (888) 345-5501

For sale information visit: https://www.xome.com or Contact (800) 758-8052.

SENDER OF THIS NOTICE:
AFTER FILING, PLEASE RETURN TO:

Nestor Solutions, LLC
214 5th Street, Suite 205
[illegible]

T.S. #: 2023-05556-TX

**EXHIBIT "A"**

**BEING situated in Collin County, Texas in the Benjamin Sparks Survey, Abstract No. 813 and being part of a 21.969 acre tract described in a Deed from Ben Biggs to E. E. Pillard, dated September 17, 1968, recorded in Volume 717, Page 579 of the Collin County Deed Records and being of a 22 acre tract described in a Partition Suit, recorded in Volume Y, Page 403 of the District Court Minutes, Collin County, Texas and being more fully described as follows:**

**BEGINNING at an iron stake which bears North 89 degrees 25 minutes 19 seconds East, a distance of 212.42 feet and South 00 degrees 07 minutes 56 seconds West, a distance of 265.50 feet from the Northwest corner of the said 22 acre tract.**

**THENCE South 00 degrees 07 minutes 56 seconds West, a distance of 266.40 feet to and iron rod found for corner;**

**THENCE South 89 degrees 25 minutes 19 seconds West, a distance of 339.55 feet to a nail set for corner in the center of a 60 feet wide Road and Utility Easement;**

**THENCE North 00 degrees 07 minutes West, along the center of said Road and Utility Easement, a distance of 266.39 feet to a nail set for corner;**

**THENCE North 89 degrees 25 minutes 19 seconds East, leaving the center of said Road and Utility Easement, a distance of 340.71 feet to the Point of Beginning and containing 2.080 acres (90,605 square feet) of land.**

**NOTE: COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.**

Unofficial

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

John Helstowski
Bar No. 24078653
jgh@jghfirm.com
Envelope ID: 107376983
Filing Code Description: Plaintiff's Original Petition (OCA)
Filing Description: Plaintiff's Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction and Request for Disclosure
Status as of 10/29/2025 10:17 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| John GHelstowski | | jgh@jghfirm.com | 10/28/2025 12:43:35 PM | NOT SENT |